This is Flores vs. Wal Mart. Mr. Lindsey? Yes, sir. Good afternoon and may it please the court. My name is James Lindsey. I represent the appellants in this case. And with the court's indulgence, what I'd like to do this afternoon is move from first FLSA, then go to RICO and rest on our papers due to the limitation of time on the false imprisonment claims. What was that first one? FLSA. Let me start with FLSA. May I ask you at the outset what our standard of review is with respect to the FLSA? Yes. Collective action. We agree. Particularly the decertification. We agree that after discovery, the issue of whether opt-ins are similarly situated to name plaintiffs is to be determined by a preponderance of the evidence. No, I was asking not the standard of proof, not the burden of proof, but rather our standard of review. Oh, standard of review. I think both sides have said it ought to be abuse of discretion, but I also think you've agreed that this court has not made a determination, at least in a presidential opinion. That's correct. All right. On the standard of proof, you suggest a preponderance of the evidence. And the FLSA mechanism is kind of an unusual bird. It's not a Rule 23 mechanism, obviously. You don't have the whole detailed procedural rule which establishes it and governs how a class is actually assembled and governs other aspects of it. But the oddity seems to be this two-step kind of so-called certification, if that's what it is at the outset. Agree that in and of itself is really just kind of a pleading standard at that stage? Not quite a pleading standard. Normally you come forward with some declarations. You come forward with some proof. Pleading plus something. Pleading plus. But the second stage in reality turns out not to be a certification stage, but invariably a decertification request. Normally it's a decertification request, but in this case, Walmart was content just to let us move for final certification because it was content to just. Regardless of whether you're moving for final certification, the defendants are moving for decertification, the burden is still on the plaintiffs and you're suggesting it should be preponderance of the evidence? Yes, Your Honor. That's what I wanted to establish. But the question here, and by the way, I'd like to reserve four minutes for rebuttal, Judge Fuentes. But the question here, preponderance of the evidence, but the question is what evidence is relevant? And for that purpose, you need to apply the correct legal standard. And the correct legal standard is something that this Court reviews de novo. Now what the District Court did, and the error of the District Court, is what the District Court required was Rule 23 legal standard of the predominance. Why do you say that? What do you point it to in the District Court's decision? Well, look at the distinction between Rule 23 and, as Your Honor said, the oddity of a similarly situated. Well, maybe there is, but Judge Jordan's question is what is there to suggest that the District Court applied Rule 23 standards rather than the similarly situated standard that we look to under this Act? Right. What are you looking at in the opinion? Because what the District Court did is relied on differences that are legally immaterial. Well, I'm not sure I follow your logic. You may not agree with how the District Court came out, but that doesn't mean that the District Court judge applied a Rule 23 standard, does it? I mean, can you point to anything in the language of the District Court that shows that the Court was mistaken and said, oh, I'm applying 23 here? No. What the District Court did is look to differences that are legally immaterial. What do I mean by that? That's just the way of saying he was wrong, right? No. Not that he applied the wrong standard. No. That's not what I'm saying. What you look at and what courts look at, what the O'Brien case says, is you look at the theory. You look at plaintiff's theory. Now, what does that mean? What it means is what are plaintiffs legally trying to prove in this case? Let's follow your logic for a second. If that's true, that all you have to have is the same theory, then the O'Brien case itself is a little bit schizophrenic, isn't it? Because it talks about different facts. It talks about different kinds of things that a District Court could look at to say, well, you're not similarly situated. I mean, if a theory was all you needed, then no difference would make a difference at all, right? Well, here, take a look at the two cases. Take a look at just two cases, Myers v. Hertz versus Morgan v. Family Storks. The Second Circuit case in Myers v. Hertz versus Eleventh Circuit case in Morgan v. Family Storks. What's the difference? The same issue was being litigated, whether or not there was an executive exemption to the Fair Labor Standards Act. But what the court looked at, and what turned the case in Morgan in favor of class certification of the collective action, was the commonality of a common handbook. As a matter of fact, the Eleventh Circuit called it a one-size-fits-all handbook. And they said that the tasks described in the handbook are cookie-cutter, and they applied one-size-fits-all, and that's exactly what we have in this case. There's no dispute in this case. We've got, what, at least a couple dozen more than that, actually, different subcontractors who are working with their employees in various places, and they're working under the supervision of different managerial personnel, and they are at least, according to, and I'll confess I don't remember precisely how the district court ordered it, but they would be subject to some different defenses, perhaps some statute of limitations defenses in certain instances, and perhaps joint employment defenses in others. I mean, these are all things that the district court looked at and said, you know what, I think there's enough going on here that's different, that even though everybody is saying, in the end, hey, we didn't get paid what we should have gotten paid, we were misused, that it's different enough that there's just, they're not truly similarly situated. Why can't the district court look at that? The district court can look at that, but the district court should focus, and the error of the district court here is it focused on legally irrelevant facts. Is that because simply situated solely relates to the cause of action or a legal theory, rather than the facts and circumstances of the litigants? In part. What you focus on is what is, what is, what are the Plankers proving, and what is the defense? And the defense here is these aren't our employees. You mean if they're all making the same assertion and the same claim, de facto they are similarly situated? Not necessarily. What they're all, what joins them all together here is a common policy enforced by Walmart. The Walmart maintenance manual, which dictates, regardless of. That dictated how they performed specific cleaning functions, didn't it? And it was limited to that. Well. It didn't go to other conditions of employment because Walmart was not their employer. Well, it did dictate the conditions. It did dictate the procedures. Where? It said that in every instance. It dictated down to the urinal cakes. It doesn't matter that they are working in different crews and the crews work for different contractors. No. Different contractors make different policy decisions. No, because all of the contractors were bound by the Walmart maintenance manual. All of the contractors were bound by Walmart's inspection, daily inspection, as to whether or not the cleanliness of the stores met Walmart standards. How does that raise anything other than the means and methods by which the employees, the cleaning people, actually perform specific functions and how they were overseen in those functions? How does it go back? Exactly. And that's exactly the point. How is that relevant to similar situation? Because the issue that's being determined here, the only legal issue as to liability, is whether these individuals were suffered or permitted to work at Walmart stores. Well, that's not really. And what does that mean? No, that's not the only issue. The issue is whether they're similarly situated. That's what we have to look at. And you're pointing to, actually, it was a perfect analogy, Mr. Lindsey, because you said it describes, it talks about the urinal case. It's talking about the end result they want. It doesn't say, and you will have employees report in this fashion, and you will pay them in this fashion, and you will do X. It's talking about how you clean the rug and how you wax the floor and what you put in the toilet to clean it. The fact that Walmart dictates the procedures, the fact that Walmart says use a rayon mop in this instance and use a cotton mop here. How does that contribute anything to whether or not these men are similarly situated? Because they control. And when you control the work, when you control the work, by the key. Contractors here didn't have the key. Walmart had the key. When you control the work, you are suffering or permitting these people to work. And therefore, you have FLSA liability. We've got to finish up. Does Walmart leave any discretion for the type of cleaning that would be done and whether, in fact, contracting would be done to the store managers? It makes no difference. Because the Walmart maintenance manual, it's undisputed here that the Walmart maintenance manual applied to contractors and it applied to store employees. It applied across the board. It dictated the work. It dictated how the work was performed. There's no dispute as to that. It's just that Walmart wants clean stores like anybody else. Absolutely. We want clean stores and this is how you're going to clean the store. Exactly. But because of that, all of the litigants in the asserted class are similarly situated? Absolutely. And that's the meaning of Morgan v. Family Dollar Stores. When you have a one-size-fits-all manual that dictates exactly how work is to be performed, as in this case, and it's undisputed, then you have a Morgan v. Family Stores case, it's the 11th Circuit. Mr. Lindsey, thank you very much. Thank you, Your Honor. Mr. Murray. Good afternoon, Your Honors. May it please the Court. David Murray for Appley Walmart Stores. We do agree that the standard of review of the decertification question is an abuse of discretion and we would also urge the Court, if you're going to address the precise burden of proof at decertification, that it should be the preponderance of the evidence standard for the reasons that we outlined in our March 16th letter brief. How would we avoid talking about what the standard of proof is? I don't think you can, and when you focused us on that question, we went back and looked at your guidance in Zimzik. We looked at the cases that are cited there. We looked at the cases that Chief Judge Brown cited in his decision. All of them talk about a more rigorous analysis at decertification, a heavier burden that the plaintiffs bear. They have to make a more factual-based showing. So it all points in the direction of a preponderance of evidence standard. And you folks actually agree on that point, right? Yes, I think we have agreement on the standard. I think the discussion about the Walmart manual, that really goes to a question of joint employer status more than similarly situated. It would be a basis, and I think Chief Judge Brown noted this in his decision, to look at the extent to which, as an alleged joint employer, Walmart was exercising supervision over the workers. But it doesn't go to the question of whether they were similarly situated for purposes of the wage injury that they allege. And on that ground, as Chief Judge Brown's decision details, over 20 citations to the record evidence, the compensation practices of the different contractors resulted in different types of wage injury. You had some folks who, in fact, said they did get paid overtime, but not every week. Others who never got overtime. Some people claimed that their wage injuries was they didn't get checks for the last two weeks of their work. Others claimed we had to pay the contractor security deposits, and when we left the crew, we never got that money back. There is some commonality, isn't it? I mean, they have some issues in common which have to do with wages. And the determination of whether the wages were fair or not, it's really a mathematical issue, isn't it? It's much more than that because the nature of the wage injuries are so different. So you do have, for example, some of the opt-ins who said we work 40 hours a week. What's the biggest issue is not being paid overtime? That's probably the issue that you see in more of the opt-in claimants' evidence, but not the only one. I mean, there are those who, in fact, didn't work more than 40 hours a week, those who said they did get overtime on occasion. Well, aren't you answer, if you would, Mr. Lindsay's argument, and from the letter, actually, March 9, 2012, where they say, look, there's always going to be some differences here and there. I mean, nobody's going to be identically situated. The things that the defendant are pointing to, the things that they are pointing to, are really just minor differences that don't undermine the basic commonality here, which is Walmart was stiff in everybody. They should have gotten paid fully for their work, and they weren't. And the fact that they stiffed Mr. A in this way and Ms. B in that way is irrelevant to the point that they were employed in a fashion that Walmart ultimately exercised control over, and they were not being paid what they were owed. And that's the common point. That's what I take to be their pitch. What's wrong with it? Really, that is a theory, that these were undocumented workers and that they were taken advantage of and not paid statutory minima in some way or another. But the problem with that general theory is it doesn't pass the similarly situated test within the meaning of Section 216B. That's what I'm trying to get at. Why is it wrong? Because the point of the collective action under 216B is to allow representative testimony of a few to establish a wage violation that then demonstrates the harm to the remainder of the opt-in claimants. And that was not possible in this case, first of all, because the nature of the wage injuries varied based on the compensation practices of the various contractors and subcontractors. Is one possible answer that the commonality goes only so far as that these various plaintiffs are seeking the same or similar remedies, but the differences that stand in the way of a determination of similarly situated go to some of the other factors? Yes, I think here you have both a failure by the plaintiffs. In fact, I would say their own evidence refuted that they were similarly situated to the named plaintiffs. But you also have, and it's very well accepted in this circuit and other circuits, two additional factors. And that is, are there individual defenses that would make collective treatment of these claims unmanageable? We certainly have that here. I was just going to get to that. Since abuse of discretion is the standard that we are to apply here to the certification determination, to what extent should this court be looking to or even deferring to determinations of the district court relative to manageability or unmanageability given the various differences that the district court perceived here among the various plaintiffs? Yes, I think Chief Judge Brown, as the trial court, was in the best position to look at the evidence to consider how would I try a collective action under these circumstances. And as you see in his decision, he didn't reach the ultimate determination on any of the individual defenses. He just examined them for purposes of manageability. He also looked at the fairness and due process concerns of trying to bring 110 people who worked in over 130 stores in over 30 states for 77 different contractors. And he said, clearly, the concerns about judicial efficiency, fairness, due process, weigh against a collective action. I think that this court should give trial judges a lot of deference in making those determinations. And certainly, under the abuse of discretion standard, given the evidence here, what Chief Judge Brown ruled was certainly within the range of permissible decisions. The claims are still all the same. There are claims for back wages, specifically failure to pay overtime. Not in every case, Your Honor. There are some opt-ins who really did not have overtime claims. We also have a problem in that a number of them were time barred. What other claims do you have? I'm sorry? What besides overtime claims? That there were security deposits that were paid to get the jobs, and those security deposits were never refunded. That there were several instances where opt-in claimants alleged that they left the cruise and were not paid for the last week or two or month of their employment, which would cover not just overtime, obviously, but also their hourly rate. Now, if you were to accept for the sake of discussion, and I know in your letter you say the plaintiffs waived this, but if we thought they hadn't waived it, could they legitimately say, hey, wait a second, even if you believed that the people who said we didn't get overtime are so different from the people who said we only got overtime occasionally, you could handle that by just saying, okay, we'll have representative testimony from one set and from another subset. I mean, why was it an all or nothing thing? The request by the plaintiffs for certification was all or nothing, as I'm sure you've seen in the record. The difficulty that Chief Judge Brown, I think, focused on is the lack of connection between the various opt-in claimants. They were, in many instances, just one, maybe two, who worked in a particular store together. And so in order to try to demonstrate through representative testimony what the practice was that led them to have that particular wage injury, whether it was not being paid overtime or not receiving their security deposits back, was going to necessitate a lot of separate individualized trials. And at that point, you've got Walmart witnesses coming in, store managers, assistant managers. What does, aside from manageability issues, which are present in Rule 23 actions and present here, what does similarly situated mean? And is it a concept that has a lot more play in the joints than the more regimented and, I would suggest, rigorous standards of Rule 23? I think it does. When I look at it and I look at the cases and I try to discern what the guiding principles should be, it seems that you have to find that there's a single FLSA-violating policy and that the proof of that policy would prove a violation as to all the plaintiffs that are being put into the collective action. And then I think the recent Dukes case where, again, it's in the Rule 23 context, but it does talk about the ability to use representative testimony and when you can draw reasonable and fair inferences as judges based on that testimony. And I think in this case, Chief Judge Brown clearly saw that that was not going to work because there were so many different aspects of both the wage claims but then also proving up the joint employer question, proving up whether certain plaintiffs were time barred, proving up whether Walmart had paid these contractors more than enough money to pay their workers in turn a lawful wages. You're suggesting we have something akin to an analog to adequacy here in this case? I think you have a statutory prerequisite that is absolutely essential but has to be met. And if you don't meet that statutory prerequisite, you don't have to move on to factors two and three. Would it be all that difficult to have subgroups of plaintiffs that are put in groups depending on the claims that are made? Yes, I'm sorry. I think that that is something that, first of all, should be the responsibility of the named plaintiffs who are proposing a collective action. But if you were to say should a judge have that burden of trying to parse out what subclasses might be appropriate here, I leave that up to you. You set those rules. But in this particular case, even that was not going to be feasible because so few of the plaintiffs knew any of the opt-in claims. In fact, none of the named plaintiffs knew any of the other opt-in claimants. They had never set foot in a lot of the states where these other workers worked, had never been in the stores, didn't know who their contractors were. So there was absolutely no way that a couple named plaintiffs in New Jersey who worked in a local Walmart could testify as to what an independent contractor and the Walmart store manager did down in Georgia or over in Texas or out in California with any degree of reliability that would pass due process. How about by saying, well, we go into the store at closing time. They'd lock the front door. They'd get the manual out and say, these are the urinal cakes. He's back on that again. I was hoping to avoid that. That was for Judge Smith's benefit. Here's the kind of wax you use. Don't show your face near an exit until you got this done. If the theory is that that's happening no matter where Walmart is operating, that you could have a sufficiently representative testimony from the named plaintiffs to cover those working conditions and addressing in that the fact that, you know, we just were lucky to get paid what we were lucky to get paid. Well, this case in the record demonstrates the problem with that theory because I'm speaking specifically to note 25 of our brief. We deposed 7, 8, 9, I forget how many of the named plaintiffs and opt-ins. Not a single one of them had ever seen the Walmart manual. So none of those individuals would be able to testify about how that manual did or did not set any sort of common policy. What's the purpose of the manual? That's a good question because we don't know the extent to which it was actually used and it was actually prepared by Johnson Wax, which was a large vendor of Walmart. It was not a Walmart document. And so as best we can tell, if it was used, it was used in the breach and it was certainly not used by any of the folks that we spoke to through class discovery in this case. I see my time is almost running out. I have not even touched on RICO or false imprisonment. I'd be happy to answer any questions you have on that or continue the… Did you see the employment records for the people who are in the contract cleaning groups? The contractors kept the records. Walmart did not have records for these independent contractor employees. I do have one question about RICO, although your colleague across the aisle there didn't bring RICO up at all in his opening discussion, and that is you make the assertion that the illegal status of these workers represents a break in the chain of causation, that there's a proximate cause problem. And I'm wondering how that is, how illegal status has anything to do with proximate cause. Is that a proximate cause or is it a but-for cause? I think the way that we've looked at it, and in light of Hoffman and IRCA, the fact that undocumented workers are not entitled to earn a legal wage means that if they have worked, they are protected under the FLSA for statutory minima compensation, but only for work actually performed, and so it's compensatory. It's the balance that courts have tried to strike in light of IRCA, and I think what that means for purposes of this case is really a direct proximate cause analysis, because if the only wage injury that these workers, because of their status, can allege, is the statutory minima under the FLSA for work actually performed, then that tells you the only place that their injury can result from, and that's an FLSA violation. And that is not a predicate act. So while we talked in our letter brief about that status being intervening, I think it probably isn't, because you never have to get past the FLSA. But if you talk about that as intervening and looking back. Well, good enough. If you're saying that you're not sticking with that statement. No, I think it's just another way, Judge Jordan, to analytically see that there's a disconnect, there's an attenuation between the actual statute that gives rise to the only injury from a wage standpoint that these individuals can seek redress in the United States for, and the immigration law predicates and the money loan predicates and the involuntary servitude predicates and so on. Thank you, Mr. Murray. Thank you. Thank you very much. Mr. Lindsey. Thank you, Your Honor. What counsel just said is what you look to is a single violating policy, and that's exactly what we have here. We have the use of contractors in a layered fashion in order to insulate Walmart from FLSA liability. And what this court looks to, as in Martin v. Skeller, is whether the FLSA employer actually controls the work. Now, counsel misspoke. And I'm not going to say intentionally, but he misspoke when he said the Walmart maintenance manual was, quote, used in the breach. That's simply not the case. The Walmart maintenance manual is transmitted with a letter that said this is mandatory. This is mandatory for all employees of Walmart and all contractors. I understood him to be saying, and maybe I misunderstood, that if it was mandatory none of the people that you folks named as plaintiffs knew that because they'd never seen the thing. That as far as getting common evidence, representative evidence, from one of the named plaintiffs about this manual, it just wouldn't have happened because they didn't see it. And that undermines your assertion that it's this manual and the policies associated with it which really show a unified theory. What's your response to that? The response to that is Walmart never asked at the depositions whether or not they had seen the maintenance manual. They studiously avoided that question because they feared the answer. The Walmart maintenance manual by its very terms was distributed to each and every Walmart and it was mandatory. And we have the Walters Declaration which corroborates that. It was mandatory. Now all Walmart had to do here in order to satisfy that question, all they had to do is in a decade of litigation produce one affidavit. One affidavit from one store manager that said, I never saw it. It was not mandatory at my location or it was only mandatory in the breach. They did not. They accepted Walters Declaration and it's unchallenged that that Walmart maintenance manual went to each and every store and was mandatory. It dictated the terms of employment. It dictated the procedures. And I'm not going to mention the urinal case again, but I will mention the mops again. It said that you mop, you have to use a mop. And it dictated when you use a rayon mop and when you use a cotton mop. And it told you when you're using a mop. What's wrong with having a maintenance manual that dictates how clean my store is going to be? That's correct. But they dictated the procedures. And then they followed it up with daily inspections. And that also was uncontroverted. What do those procedures have to do with your essential claim for back wages, failure to pay overtime, et cetera? Because according to this court's test in Martin v. Selker, that means that there is no contractor defense. That in fact Walmart is the FLSA employer because they are dictating exactly how the work is being done. They are inspecting it. Again, all Walmart had to do was out of all of its stores in the country, produce one affidavit from one supervisor that said, I never inspected the stores. I never inspected the work. I never sent them back to. Did the manual ever say anything about this is how you'll pay your employees. This is the schedule in which you'll pay them. This is the way in which you'll manage the. No, and it doesn't have to. Because once they're employees for FLSA purposes, the law says that. The law says that you need to pay time and a half. I'm sorry? Doesn't that go to the issue of the quality of representative testimony that you might get from these? No, because the issue as to liability is whether they're employees for purposes of the FLSA. The quantum of damages is different. So we're going to have to. Your Honor, I would like to say one thing about the RICO. And that's. Finish it very quickly. And that's basically what the, what Walmart raises here is an in peri delicto defense. And the plaintiffs here are not in peri delicto with the contractors and with Walmart. And how do we know that? Well, the contractors were found guilty of a crime. Guilty of crimes. Not just crimes. But crimes significant enough to be identified specifically as predicate acts. All the way up to Walters. And Walmart itself was the target of a federal criminal investigation. Now, the difference between the plaintiffs and Walmart here is that the plaintiffs committed no criminal violation at all. It's not, it's a criminal violation. One that Walters was convicted of. To encourage undocumented aliens to remain in the country. We have that argument in the brief, so I think we're going to have to stop here. Thank you. And I appreciate your arguments. Thank you both very much. We'll take the case under advisement.